Estate of Truman S. Belyea, Deceased, Leon S. Belyea, Executor v. Commissioner.
Estate of Truman v. Commissioner
Docket No. 33603.
United States Tax Court
1952 Tax Ct. Memo LEXIS 33; 11 T.C.M. (CCH) 1138; T.C.M. (RIA) 53337; November 21, 1952
*33 Where the decedent made transfers of stock in two closely held corporations to his son and daughter-in-law, together with credit balances on the books of one of these corporations, held, on the facts, the transfers were substitutes for testamentary disposition made in contemplation of death. Edward E. Burke, C.P.A., 921 Bergen Ave., Jersey City, N.J., for the petitioner. Stanley W. Herzfeld, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $45,278.03 in the estate tax of the estate of Truman S. Belyea. The entire deficiency is in dispute. The sole question for our decision is: Are the values of stock in two closely held corporations transferred by the decedent to his son and daughter-in-law, together with credit *34 balances on the books of one of these corporations transferred by the decedent to his son, includible in the decedent's gross estate as transfers in contemplation of death? Findings of Fact The facts stipulated by the parties are found accordingly. The petitioner is the executor of the estate of Truman S. Belyea, who died on December 24, 1946, a resident of the State of New Jersey. The Federal estate tax return of the estate of Truman S. Belyea was filed by the executor with the collector of internal revenue for the fifth district of New Jersey. Decedent was born on March 28, 1873, and was originally in the electric contracting business, manufacturing gas-fired pressing machines and the installation of plants primarily for the garment trade in New York. Belyea Company, Inc. was incorporated under the laws of the State of New York on November 29, 1918. The decedent owned 50 per cent of the capital stock of Belyea Company, Inc. during the period from November 29, 1918 to 1920. In 1920 the decedent purchased the remaining 50 per cent of the capital stock of Belyea Company, Inc. for $20,000 from William R. Berryman, who had owned this 50 per cent since the organization of the *35 corporation. The Berryman Real Estate Corporation was formed on September 25, 1919, and owned the property of which Belyea Company, Inc. was a tenant. The decedent and Berryman each owned 50 per cent of the capital stock of Berryman Real Estate Corporation from its date of incorporation until 1920, when the decedent purchased Berryman's share of the capital stock for the price of $17,500. On January 2, 1922, the decedent made a gift to his son, Leon S. Belyea, of 50 per cent of the capital stock of Belyea Company, Inc., and 50 per cent of the capital stock of Berryman Real Estate Corporation, having a value on that date of $37,500. At the time the 1922 gift was made Bessie M. Belyea, wife of decedent and mother of Leon S. Belyea, was living, and at that time the donee, Leon S. Belyea, was engaged to be married and was married the following year. Leon S. Belyea had entered the employ of Belyea Company, Inc. about three years prior to the date of the 1922 gift. The decedent was motivated in making the 1922 gift, which is not here in issue, by a desire to give his son a financial interest in the business and to express his appreciation for the son's success in taking hold of the *36 work. For some years prior to July 1937, Belyea Company, Inc. was located in New York City, and primarily engaged in rebuilding electrical motors for small industries such as the garment trade and hotels. In 1937 the decision was made that the company would go into the business of larger equipment for power plants, steel, and other heavy industries. On July 31, 1937, Belyea Company, Inc. was incorporated under the laws of the State of New Jersey. Subsequent to the New Jersey incorporation, the assets of the New York corporation were transferred to Belyea Company, Inc. of New Jersey, and the operations of the New York corporation were discontinued. The capital stock of Belyea Company, Inc. of New Jersey was issued 50 per cent to Truman S. Belyea and 50 per cent to Leon S. Belyea in exchange for the shares of caiptal stock of the New York corporation. Machinery Building, Inc., which owned the New Jersey real estate to which the Belyea Company, Inc. moved, was incorporated under the laws of the State of New Jersey on July 16, 1937. Its capital stock was issued 50 per cent to the decedent and 50 per cent to Leon S. Belyea, except for one qualifying director's share. Leon S. Belyea *37 obtained a decree of separation from his wife, Thelma, in 1934. Following the death of decedent's wife in 1939, the decedent moved into the home of his son Leon and lived with him continually up to the time of his death. The decedent paid no part of the household expenses. In April 1940, Leon S. Belyea married Renee Edwards. On July 18, 1939, the decedent executed his last will and testament in which he bequeathed his entire estate to his son, Leon S. Belyea. The decedent made the following gifts from January 1, 1938 to June 30, 1946, inclusive: January 1, 1938
$5,000
March 1, 1939
5,000
July 26, 1940
4,000
April 25, 1941
115 shares of capital stock
of Belyea Company, Inc.
worth $37,375
April 25, 1941
30 shares of capital stock of
Machinery Building, Inc.,
worth $4,500
April 25, 1941
26 shares of capital stock of
Machinery Building, Inc.,
worth $3,900 (Donee: Renee S. Belyea, wife of
Leon S. Belyea)
January 2, 1942
17 shares of capital stock of
Machinery Building, Inc.,
worth $2,967.86
February 2, 1942
7 shares of capital stock of
Machinery Building, Inc.,
worth $1,222.06 (Donee: Renee S. Belyea, wife of
Leon S. Belyea)
December 31, 1944
$3,000
December 31, 1945
3,000
June 30, 1946
3,000
*38 Except for the gifts to Renee S. Belyea, all of the gifts above were to decedent's son, Leon S. Belyea. The gifts other than the gifts of stock were of amounts credited on the books of Belyea Company, Inc. to the decedent and transferred by him on the books of that corporation to the credit of Leon S. Belyea. On February 2, 1942, 22 of the 26 shares of stock of Machinery Building, Inc., given by the decedent to Renee S. Belyea in 1941, were transferred by Renee to her husband, Leon S. Belyea. On January 5, 1943, the remaining four of the above mentioned 26 shares, together with the seven shares of the Machinery Building, Inc. capital stock given to Renee by the decedent on February 2, 1942, were transferred by Renee to her husband, Leon. The net worth of the decedent on the date of each of the gifts set forth above, before the gifts were made, was as follows: January 1, 1938
$58,699.08
March 1, 1939
66,275.53
July 26, 1940
81,319.48
April 25, 1941
92,409.75
January 2, 1942
57,112.99
February 2, 1942
54,255.18
December 31, 1944
43,927.09
December 31, 1945
32,047.35
June 30, 1946
36,640.38
No dividends were paid by Belyea Company, Inc. or by Machinery *39 Building, Inc. during the period from April 25, 1941, to December 24, 1946. The decedent and Leon S. Belyea were officers of Belyea Company, Inc., and in each of the years 1941 through 1946 each of them received a salary of $18,000 from that company. During the years 1938 to 1941 Leon S. Belyea was responsible for from 80 to 90 per cent of the business decisions of Belyea Company, Inc. The book value of the capital stock of Belyea Company, Inc. was $259.70 per share on January 1, 1938. On the date of decedent's death the book value had increased to $1,096.42 per share. On April 25, 1941, when decedent gave 115 shares of the stock of this company to his son, the book value per share was $325.67. On January 2, 1942, its book value was $614.26 per share. At the time the gift of the stock was made the decedent was aware that it was appreciating in value. Throughout the year 1941 the business of the corporation was much better than it had been in 1940 or any previous year. The total value on the date of decedent's death of the stock transferred by the decedent on April 25, 1941, and in January and February, 1942, as described above, was $152,739.50, while the value of the gross estate *40 of the decedent as of the date of his death and reported in the estate tax return filed by petitioner was $99,227.29. The decedent was an active business man and an active executive of the Belyea Company, Inc., Machinery Building, Inc., and Berryman Real Estate Corporation, traveling a great deal on business for Belyea Company, Inc., and drove his car to business daily. He enjoyed seemingly excellent health, did not lose a single day from business due to sickness, and had never been sick a day in his life to the best knowledge of those who knew him. He had worked on the day of his death, which was Christmas Eve; had lunch with the corporate executives on that date and dinner with his son and daughter-in-law that evening. The decedent while driving home suffered a sudden heart attack and was found dead at the wheel of his car. During the year of his death he had participated in the purchase of the capital stock of the Glow Electric Company of Cincinnati, Ohio, and had invested $40,000 therein, $20,000 of which was obtained by borrowing, and he was familiar with the fact that it would take at least five to ten years in which to realize upon the investment. The decedent's dominant *41 motive in making the gifts set forth above was to put into effect during his life the testamentary scheme reflected in his will by transferring directly or indirectly to his son a large portion of his estate. The gifts set forth above were made in contemplation of death and are includible in the decedent's gross estate at the values set forth in the statutory notice of deficiency. Opinion HILL, Judge: The sole issue presented by the facts before us is whether the transfers made by the decedent between January 1, 1938, and June 30, 1946, were made in contemplation of death within the meaning of section 811 of the Internal Revenue Code (before amendment by the Revenue Act of 1950). It is well established that the words "in contemplation of death" mean that the thought of death is the impelling motive for the transfer. United States v. Wells, 283 U.S. 102. Therefore, we must examine the facts in the light of all the surrounding circumstances at the time of the transfers to determine whether the decedent's motive was associated with life or with death. We have found as a fact that the decedent enjoyed normal good health up until the time of *42 his sudden death, was regularly engaged in business, and had no reason beyond that knowledge of certainty of which we all are aware to apprehend death. At the time the first transfer in question was made, the decedent was in his late sixties, yet age in itself has not been regarded by the courts as a decisive test for the motive behind the transfer. United States v. Wells, supra; Estate of Charles J. Rosebault, 12 T.C. 1. If our decision were ruled by consideration of the donor's physical condition alone, it must lead us to the conclusion that the gifts were not motivated by any anticipation of death; however, this is not the case. The petitioner argues that the gifts of stock in question were motivated by the decedent's appreciation for his son's exceptional success in the management of the business, in which they were equal stockholders, by a desire to give his son a growing interest in the company, and to express approval for his son's second marriage. Gifts are frequently motivated by gratitude and affection, but so are bequests. The subject of the gift is a factor which, along with others, can provide a basis for distinguishing between gifts motivated *43 by gratitude and affection which are in contemplation of death and gifts similarly motivated which are not in contemplation of death. Vanderlip, et al. v. Commissioner, 155 Fed. (2d) 152, affirming 3 T.C. 358. As Judge Learned Hand, speaking for the court in the Vanderlip case said: "* * * A gift differs from a bequest, - apart from the inevitable loss of control over the property - only in so far as it secures enjoyment to the donee during the donor's life; and the donor's motives are relevant to exclude the property only so far as they touch upon his [donee's] enjoyment in that period. * * *" The stocks transferred and here in question were not income producing. True, the transfers did put Leon S. Belyea in complete control of Belyea Company, Inc.; however, the record indicates that Leon S. Belyea was already in effective control of the corporation and was responsible for from 80 to 90 per cent of the business decisions made, and certainly it was not within the contemplation of either the decedent or Leon S. Belyea that the business be sold or otherwise disposed of. Nor was it contemplated by either of them that Leon S. Belyea do anything other than *44 continue the business in the same manner as it had been operated before the stock transfers were made. Furthermore, Leon S. Belyea was not in need. His salary was substantial and the record indicates that he had other sources of income sufficient for the needs of himself and his family. We think the decedent's dominant motive in making the gifts set forth in our findings of fact was to put into effect during his life the testamentary scheme reflected in his will. On January 1, 1938, the decedent made a gift of $5,000 to his son, followed by a gift of $5,000 on March 1, 1939. On July 18, 1939, the decedent executed his last will in which he bequeathed his entire estate to his son, Leon S. Belyea. In 1941 the gifts of stock in question were made. Thereafter, the financial history of the decedent was one of a steadily declining net worth. During the same period, however, the financial history of Belyea Company, Inc., to which the decedent had devoted his entire business life, was one of steady, even phenomenal improvement and success. By the stock transfers in 1941 and 1942 the decedent gave away a substantial portion of his assets. His net worth just prior to the gifts of April *45 1941 was $92,409.75. The value of these gifts in that month was $45,775. The value of the additional 24 shares of Machinery Building stock, subject of the gift in early 1942, was $4,189.92. At the time of the decedent's death the total value of these shares was $152,739.50. These gifts were supplemented from 1938 to 1946 by transfers from the decedent to his son of amounts totaling $23,000, credited to the decedent on the books of account of Belyea Company, Inc. Petitioner seeks to minimize the significance of these relatively substantial gifts by claiming that the decedent's net worth before the gifts was not so great as to make avoidance of estate tax an important motive. But in fact the decedent had reason to contemplate a much larger saving in estate tax than that indicated by the book value of the shares at the time the gifts of stock were made. The decedent was aware of the rapid appreciation in the value of the stock in the Belyea Company, Inc., and undoubtedly looked forward to even greater increases in its value during the waning years of his life. The facts discussed above give the transfers before us a testamentary flavor which the petitioner has been unsuccessful *46 in dissipating. Therefore, on the basis of the record as a whole, we hold the transfers in issue to be substitutes for testamentary disposition made in contemplation of death. Decision will be entered for the respondent.